FILED
John E. Triplett, Acting Clerk
United States District Court

By jburrell at 1:04 pm, Apr 20, 2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | **INFORMATION NO.**  4:21-CR-88 |
| **v.** ) | |
| ) | **18 U.S.C. § 371** |
| ) | **Conspiracy** |
| **TIFFANNI FORBES** ) | |
| ) | |

**THE UNITED STATES ATTORNEY CHARGES THAT:**

Introduction

At all times material to this Information:

1.      Beginning no later than June 2019 and continuing through May 2020, Tiffanni Forbes, together with known and unknown co-conspirators, in the Southern District of Georgia and elsewhere, conspired to engage in an international fraud and kickback scheme targeted at the Medicare program that led to over $6 million in fraudulent claims being submitted for durable medical equipment ordered by Forbes.

2.      The Medicare Program, a "health care benefit program" as defined by 18 U.S.C § 24, is a federally-funded health insurance system for eligible persons 65 years of age and older, and certain disabled persons.  Medicare is administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.

3.      The Medicare Advantage Program, known as Medicare Part C, offers beneficiaries a managed care option by allowing individuals to enroll in private health

1

plans rather than having their care covered through Medicare Part A and Part B. CMS contracts with Medicare Advantage programs to provide medically necessary health services to beneficiaries; in return, CMS makes monthly payments for enrolled beneficiaries to the Medicare Advantage programs.

4. After receiving a Medicare National Provider Identifier ("NPI") and Provider Transaction Access Number, a provider can submit bills to Medicare, known as "claims," in order to obtain reimbursement for items or services provided to Medicare beneficiaries. Claims to Medicare are typically submitted electronically and require certain information, including (a) the Medicare beneficiary's name and identification number, (b) identification of the benefit, item, or service provided or supplied to the Medicare beneficiary, (c) the billing code for the benefit, item, or service, (d) the date upon which the benefit, item, or health services was provided, and (e) the name and NPI of the medical practitioner who ordered the service, treatment, benefit, or item.

5. To qualify for payment, the health care benefit, item or service must have been ordered by a licensed medical practitioner, medically necessary, provided as billed, and provided in compliance with applicable laws.

## COUNT ONE
*Conspiracy*
18 U.S.C. § 371

6. The allegations of paragraphs 1 through 5 of this Indictment are hereby realleged and incorporated as if fully set forth herein.

7. Beginning no earlier than June 2019, the exact date being unknown,

and continuing thereafter until at least in or about May 2020, within the Southern District of Georgia and elsewhere, Tiffanni Forbes did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to commit one or more offense against the United States, that is, to use of the mail and a facility in interstate or foreign commerce, with intent to otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, that is, commercial bribery in violation of the laws of the State of Florida, Fla. Stat. Ann § 838.15, and thereafter performed and attempted to perform acts to promote, manage, establish and carry on, and to facilitate the promotion, management, establishment and carrying on of such unlawful activity, all in violation Title 18, United States Code, Section 1952(a)(3).

## Purpose of the Conspiracy

8. It was the purpose of the conspiracy for Forbes and others to enrich themselves and maximize profits at the expense of the United States and Medicare patients in the following scheme.

## Manner and Means of the Conspiracy

9. It was part of the conspiracy that, beginning at least as early as June 2019, the exact date being unknown, and continuing thereafter until at least in or about May 2020, Forbes and others were part of a nationwide "telemedicine" scheme:

   a. Individuals unknown to Forbes, and with no involvement by Forbes, developed a scheme that targeted the Medicare program to obtain millions of dollars in reimbursement for orthotics and other items.

    b. Individuals unknown to Forbes, and with no involvement by Forbes, obtained the identities and insurance information of Medicare and other elderly patients through a series of call centers

    c. Individuals unknown to Forbes, and with no involvement by Forbes, sought to sell this information to durable medical equipment companies or pharmacies, located within numerous districts across the country, including, among others, Georgia, Florida, and California.

    d. Individuals unknown to Forbes, and with no involvement by Forbes, who were located within numerous districts across the country, including, among others, Georgia, Florida, and California, sought to purchase this information in order to ultimately bill to Medicare and other payors for items ordered for these beneficiaries.

    e. Individuals known and unknown, and with no involvement by Forbes, located in Florida and locations across the country, decided to solicit physicians to write orders for braces and other items so that the items could be billed to Medicare and other federal health program beneficiaries, in exchange for a payment to these physicians.

10. At all relevant times, Tiffanni Forbes is and was a physician licensed in the State of Georgia.

11. As a physician, Tiffanni Forbes knew that she owed a duty to any patient she "treated," even through a "telemedicine" arrangement.

12. Among thousands of others in Georgia and elsewhere, Forbes owed a duty to patient C.H., located within the Savannah Division of the Southern District of Georgia, in September 2019 and for whom Forbes purported to have "treated" and prescribed orthotics.

13. Forbes was solicited to write orders for braces and other items for "telemedicine" patients and, in exchange, she would receive a small fee per diagnostic "consultation" she performed.

14. Forbes directly or indirectly received compensation from individuals and companies located in Florida and elsewhere and, in exchange, agreed to sign and did in fact sign orders for orthotics and other items reimbursable by Medicare and others.

15. Forbes used facilities in interstate or foreign commerce, with intent to otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on this scheme, including an internet-based program used to sign digitally medical records that could be sent to companies located across the country, including to the ultimate purchasers.

Overt Acts

16. As part of this scheme and with the purpose of carrying out or accomplishing an object of the conspiracy, Forbes signed false medical records describing "consultations" of Medicare patients, including C.H., certified she performed examinations never actually conducted, and certified tests never actually performed, all of which was expected and.

5

6

17. Knowing the unlawful purpose, Forbes willfully accepted and agreed to accept a per-consultation payment, including as to orthotics ordered by Forbes for C.H., a Medicare beneficiary and resident of the Southern District of Georgia, on or about September 2019 ultimately paid by Company A, a Florida corporation.

18. Forbes accepted this benefit with intent to violate a statutory or common-law duty owed to C.H., and others, in violation of Fla. Stat. Ann § 838.15.

All in violation of Title 18, United States Code, Section 371.

Karl I. Knoche
Assistant United States Attorney
Chief, Criminal Division

Jonathan A. Porter
Assistant United States Attorney
*Lead Counsel